Hardy W. RYLAND and Alma Odessa Ryland, Plaintiffs-Appellants,

v.

Alfred B. SHAPIRO, et al., Defendants,

Edwin O. Ware and Edward E. Roberts, Jr., Defendants-Appellees.

No. 82–3201.

United States Court of Appeals, Fifth Circuit.

July 5, 1983.

Dennis R. Whalen, Baton Rouge, La., for plaintiffs-appellants.

Gold, Little, Simon, Weems & Bruser, John F. Simon, Alexandria, La., for Ware and Roberts.

Before CLARK, Chief Judge, THORN-BERRY and REAVLEY, Circuit Judges.

THORNBERRY, Circuit Judge:

*Introduction:*

Hardy and Alma Ryland appeal from the dismissal of their section 1983 suit against Edwin Ware and Edward Roberts, defendants below.[1] In their complaint, the Rylands alleged that their daughter, Lavonna, was murdered by Shapiro, and that the defendants, acting under color of state law, concealed that fact, and prevented a full investigation into the murder. The district court granted the defendants' motion to dismiss, holding that the Rylands lacked standing to bring this suit, and that the defendants were protected by prosecutorial immunity.[2] We reverse and remand.

*Facts and Disposition Below:*

█ Since this is an appeal from a dismissal for failure to state a claim upon which relief can be granted, Fed.R.Civ.Pro. 12(b)(6), we accept as true the allegations of the complaint, together with any reasonable inferences that may be drawn therefrom. *Marrero v. City of Hialeah,* 625 F.2d 499, 502 (5th Cir.1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). The complaint alleges the following facts. Lavonna Ryland was murdered by Shapiro,

then a local prosecutor, on November 25, 1979. After shooting Lavonna, Shapiro telephoned Roberts, then an assistant District Attorney, and asked him to come to his residence. Subsequent to the murder, Roberts and co-defendant Ware, at the time the District Attorney, while acting under color of state law, prevented a full investigation into the causes of Lavonna's death. Ware and Roberts accomplished this by cancelling an autopsy previously scheduled to be performed by the local coroner. During the next six weeks, the defendants sought to obtain the signatures of various deputy coroners and doctors on Lavonna's death certificate, which listed as suicide the cause of death. No doctor would sign the certificate. Finally, the defendants persuaded the coroner to sign a Coroner's Report and Death Certificate, even though he had never examined the body. The Certificate listed the cause of death as suicide. The defendants also stymied a police investigation into the circumstances surrounding Lavonna's death by representing to the police that her death was a suicide. The alleged murder cover-up was exposed by the Attorney General of Louisiana, who, on September 30, 1980, obtained a conviction of Shapiro for the murder.[3] The Rylands claim that by concealing the murder for a period of approximately eleven months, the defendants prevented them from discovering that their daughter had been murdered. Since

---

1. The suit also named Alfred Shapiro as a defendant in a pendent state law claim. The district court dismissed this claim, and the Rylands have not appealed that ruling. Consequently, any claim against Shapiro is not before us on this appeal.

2. The record is somewhat unclear on whether the ruling below was pursuant to a motion to dismiss, or a motion for a summary judgment. Both motions were before the district court. Although the standing issue was decided in the context of a motion to dismiss, it appears that the court considered certain affidavits by the defendants in deciding the immunity issue. However, our reading of the district court's ruling discloses that the court dismissed the claim because it believed that the facts stated in the Rylands' complaint were not sufficient to state a cause of action under the Constitution. We therefore review this appeal as one from a

dismissal for failure to state a claim upon which relief can be granted, Fed.R.Civ.Pro. 12(b)(6). *Rutherford v. United States,* 702 F.2d 580, 581 n. 1 (5th Cir.1983).

3. It has come to our attention that the Supreme Court of Louisiana, after first affirming Shapiro's conviction, has, on rehearing, on April 4, 1983, reversed the conviction on insufficiency of evidence grounds. *State of Louisiana v. Shapiro,* No. 81–KA–1905 (La. Apr. 4, 1983) (on rehearing). This reversal does not change the disposition of our case because, under Louisiana law, evidence of prior acquittal is inadmissible in a civil suit. *See Quatray v. Wicker,* 16 La.App. 515, 134 So. 313, 316 (La.App.1931); Annotation, 18 A.L.R.2d 1287, 1315. On remand, however, the district court should consider the effect of the Louisiana Supreme Court's reversal on this case.

the Rylands were entitled to bring a wrongful death action against Shapiro under Article 2315[4] of the Louisiana Civil Code, they claim that the defendants deprived them of their civil rights by wrongfully interfering with their access to the state courts to pursue their tort claim against Shapiro.

In concluding that the Rylands did not have standing to bring a section 1983 action against Roberts and Ware, the district court stated that the conduct of the defendants did not invade any legally protected right of the parents. Rather, the court viewed the complaint as nothing more than one for failure to enforce the criminal laws of Louisiana. As a result, the court determined that the Rylands had only a generalized grievance against the defendants, common to all citizens of Louisiana, namely, the enforcement of the criminal laws. This, the court concluded, did not constitute a "case or controversy" sufficient to maintain a suit in federal courts. *See Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975); *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). As stated by the district court:

> The alleged conduct of the defendants, Ware and Roberts, did not invade a private substantive or procedural legally protected interest guaranteed by the statutes and constitution of the United States. It deals with the defendants' failure to enforce the criminal laws of Louisiana, since this failure has allegedly delayed the plaintiffs in securing the necessary information to bring their civil actions in the state court. Rights which derive solely from state law cannot be the subject of a claim for relief under Section 1983.

It is clear that what the defendants are charged with is a generalized grievance held in common by all citizens; i.e., the enforcement of the criminal laws. *Hoston v. Silbert,* 514 F.Supp. 1239 (1981). The principal motivating factor was not to deny the parents of their right of access to the courts and thereby violate their constitutional rights under the Fourteenth Amendment. The plaintiff's alleged damages were too remote a consequence of the defendants' action to hold them responsible under Section 1983. The complaint does not make out a claim of federal constitutional magnitude.

The district court next held that the defendants enjoyed absolute prosecutorial immunity under *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The court characterized the complaint as one for suppression of evidence damaging to Shapiro. Finding no distinction between a prosecutor who conspires to bring false criminal charges (*Imbler*) and the suppression of evidence that might lead to an indictment, the court concluded that "the functional nature of the activities that defendants ... were actually engaged in ... were in the scope of their prosecutorial duties, and under *Imbler,* they are immune from suit."

*Discussion:*

Our standard of review on this appeal is that set out by the Supreme Court in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957): "In appraising the sufficiency of the complaint we follow ... the accepted rule that a complaint should not be dismissed for failure to state a claim

---

4. La.Civ.Code Ann. art. 2315 (West 1979) provides in part:

   Art. 2315. Liability for acts causing damage; survival of action

   Art. 2315. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

   .    .    .    .    .

   The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: .... (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving.... The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased. A right to recover damages under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not.

unless it appears beyond a doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

In dismissing the Rylands' complaint, the district court held that the alleged conduct of the defendants "did not invade a private *substantive* or *procedural* legally protected interest guaranteed by the . . . constitution." (emphasis added). We shall therefore begin our analysis by briefly discussing the difference between suits brought to remedy substantive constitutional violations, and those brought to remedy procedural due process violations.

■ In paragraph 8 of their complaint, the Rylands alleged that "the defendants have denied the complainants the privileges and immunities extended by the Constitution of the United States, to seek redress in the Courts of Louisiana, thereby depriving [them] . . . of Civil Rights guaranteed by the Constitution. . . ." We read the complaint as alleging both substantive and procedural deprivations. That state agents may simultaneously violate both substantive and procedural rights was made clear by the now retired Justice Stewart, sitting by designation:

A single act of depriving a citizen of his right to correspond may simultaneously constitute a violation of substantive constitutional rights and of the right to procedural due process. Because the right to correspond is protected by the First and Fourteenth Amendments, the *result* of depriving a citizen of this right will violate those substantive guarantees unless the action is justified by sufficiently compelling countervailing state interests. At the same time, because the interest in corresponding is a "liberty" interest within the meaning of the Fourteenth Amendment, the *manner* of depriving a citizen of this right could violate the procedural norms embodied in the Due Process Clause. *See, e.g., Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1973) (analyzing restrictions on a prisoner's correspondence rights as a violation of both sub-

stantive constitutional rights and the right to procedural due process).
*Owen v. Lash,* 682 F.2d 648, 652 n. 4 (7th Cir.1982) (emphasis in original). Although Justice Stewart was speaking of the right to correspond, we will show below that the right of access to the courts, like the right to correspond, is also protected by the first amendment.

*The Substantive Right of Access to Courts:*

■ The right of access to the courts is basic to our system of government, and it is well established today that it is one of the fundamental rights protected by the Constitution. In *Chambers v. Baltimore & Ohio Railroad,* 207 U.S. 142, 28 S.Ct. 34, 52 L.Ed. 143 (1907), the Supreme Court characterized this right of access in the following terms:

The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship, and must be allowed by each state to the citizens of all other states to the precise extent that it is allowed to its own citizens. Equality of treatment in this respect is not left to depend upon comity between the states, but is granted and protected by the Federal Constitution.

207 U.S. at 148, 28 S.Ct. at 35 (citations omitted). It is clear that the Court viewed the right of access to the courts as one of the privileges and immunities accorded citizens under article 4 of the Constitution and the fourteenth amendment.

In *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), the Supreme Court found in the first amendment a second constitutional basis for this right of access: "Certainly the right to petition extends to all departments of Government. The right of access to the courts is indeed but one aspect of the right of petition." *Id.* 92 S.Ct. at 612.

This court recognized the first amendment right of access to the courts in *Wilson*

*v. Thompson,* 593 F.2d 1375 (5th Cir.1979), where we stated: "It is by now well established that access to the courts is protected by the First Amendment right to petition for redress of grievances." *Id.* at 1387. *See also NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 336, 9 L.Ed.2d 405 (1963); *Coastal States Marketing, Inc. v. Hunt,* 694 F.2d 1358, 1363 (5th Cir.1983).

A number of other courts have also recognized that this right of access is encompassed by the first amendment right to petition. *See McCray v. Maryland,* 456 F.2d 1, 6 (4th Cir.1972); *Harris v. Pate,* 440 F.2d 315, 317 (7th Cir.1971); *Pizzolato v. Perez,* 524 F.Supp. 914, 921 (E.D.La.1981); *Crews v. Pertrosky,* 509 F.Supp. 1199, 1204 n. 10 (W.D.Pa.1981).

A third constitutional basis for the right of access to the courts is found in the due process clause. In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court defined the right of access in a civil rights action under section 1983 in the following terms:

> The right of access to the courts, upon which *Avery* [*Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969)] was premised, is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. It is futile to contend that the Civil Rights Act of 1871 has less importance in our constitutional scheme than does the Great Writ.

*Id.* 94 S.Ct. at 2986. *See also Mitchum v. Purvis,* 650 F.2d 647, 648 (5th Cir.1981); *Rudolph v. Locke,* 594 F.2d 1076, 1078 (5th Cir.1979). The due process clause has also been construed to allow prisoners meaningful access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

■ A mere formal right of access to the courts does not pass constitutional muster. Courts have required that the access be "adequate, effective, and meaningful." *Bounds v. Smith,* 97 S.Ct. at 1495; *see also Rudolph v. Locke,* 594 F.2d at 1078. Interference with the right of access to the courts gives rise to a claim for relief under section 1983. *Sigafus v. Brown,* 416 F.2d 105 (7th Cir.1969) (destruction by jail guards of legal papers necessary for appeal supports claim for damages under § 1983); *McCray v. Maryland,* 456 F.2d at 6 ("Of what avail is it to the individual to arm him with a panoply of constitutional rights if, when he seeks to vindicate them, the courtroom can be hermetically sealed against him by a functionary who, by refusal or neglect, impedes the filing of his papers?"); *Crews v. Petrosky,* 509 F.Supp. at 1204 ("An allegation that a clerk of state court has negligently *delayed* the filing of a petition for appeal, and that the delay has interfered with an individual's right of access to the courts, may state a cause of action under 42 U.S.C. § 1983.") (emphasis added). *See also Harris v. Pate,* 440 F.2d 315, 317 (7th Cir.1971) (prison authorities may not place burdens on right of access to courts); *Corby v. Conboy,* 457 F.2d 251, 253 (2d Cir.1972).

■ In conclusion, it is clear that, under our Constitution, the right of access to the courts is guaranteed and protected from unlawful interference and deprivations by the state, and only compelling state interests will justify such intrusions.

*Procedural Due Process:*

As stated above, the Rylands' complaint may also be construed to allege a deprivation of their right to procedural due process under the fourteenth amendment. Our analysis must begin with the inquiry whether the Rylands possessed an interest protected by the due process clause of the fourteenth amendment. The Rylands claim that they have been deprived of property without due process. The Supreme Court has long held that "[t]he hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982). *See*

*Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725 (1975); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972). Article 2315 of the Louisiana Civil Code, *supra* note 4, defines the right of parents to institute wrongful death claims as a property right.[5] We have previously recognized the rights of survivors to bring a wrongful death action under sections 1983 and 1988 where authorized by state law. *Brazier v. Cherry,* 293 F.2d 401 (5th Cir.), *cert. denied,* 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961). In *Brazier,* we held that in enacting section 1988, "Congress adopted as *federal law* the currently effective state law on the general right of survival." 293 F.2d at 405 (emphasis added).[6]

*Violation of the Right of Access?*

■ Our determination that the Rylands have a substantive constitutional right of access to the courts as well as a property right in the wrongful death action leads us to conclude that the district court erred when it held that the Rylands lacked standing to maintain their suit. In reaching this conclusion, the district court viewed the Rylands' claim merely as a suit by citizens to compel state prosecutors to initiate a *criminal* action against an alleged murderer. In so limiting its analysis, the district court failed to entertain the legal theory upon which the Rylands based their case. Their complaint alleged that agents of the state

intentionally engaged in conduct that interfered with their exercise of their constitutionally protected right to institute a wrongful death suit in the Louisiana courts. As we have already shown, this theory of recovery is a valid one.

We have recently held in a Title VII case that a summary judgment by a court rendered as a result of its failure to entertain a valid legal theory was reversible error. *Trevino v. Celanese Corp.,* 701 F.2d 397 (5th Cir.1983). A similar failure to consider a valid theory of recovery under the Constitution resulting in a dismissal for failure to state a claim upon which relief can be granted amounts, in our view, to far more egregious error. Accordingly, we remand the case to the district court for further proceedings.

On remand, the court should first address the issue of whether the actions of the defendants amounted to interference with the Rylands' right of access to the courts, as defined in the discussion above. A few words, however, are in order.

■ In essence, the allegations in the complaint may be characterized as wrongful interference by the defendants with the Rylands' access to the courts. Alternatively, the actions of the defendants can be analyzed as a conspiracy to obstruct justice.[7]

---

**5.** Moreover, even if the Rylands had failed to institute suit for wrongful death, that right of action would still survive in favor of *their* heirs.

**6.** *But see Whitehurst v. Wright,* 592 F.2d 834, 840 (5th Cir.1979). In *Whitehurst,* we held that section 1983 survival law was irrelevant to a murder cover-up claim because there could be no deprivation of the decedent's constitutional rights *after his* death. *Whitehurst* is not on point here because the alleged unconstitutional actions here deprive the parents', not the decedent's, protected rights.

**7.** 42 U.S.C. section 1985(2) prohibits conspiracies to obstruct justice in state and federal courts. However, that section cannot support a cause of action in the present suit because there is no claim that the actions of the defendants are motivated by "racial, or perhaps otherwise class-based animus." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29

L.Ed.2d 338 (1971). An allegation that the defendants are motivated by some class based discrimination is essential to the maintenance of a suit under the second portion of section 1985(2), which applies to obstruction of justice in state courts:

> [O]r if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating in any manner, the due course of justice in any State or Territory, *with intent to deny to any citizen the equal protection of the laws,* or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws... (emphasis added).

42 U.S.C. § 1985(2) (1976). *See Kush v. Rutledge,* —— U.S. ——, ——, 103 S.Ct. 1483, 1485, 75 L.Ed.2d 413 (1983).

■ An analysis of the extent of a constitutional deprivation is not an exact science capable of quantification; rather, it is qualitative in nature. *Thompson v. Washington,* 497 F.2d 626, 636 (D.C.Cir. 1973). However, we have previously held that "if state officers conspire . . . in such a way as to defeat or prejudice a litigant's rights in state court, that would amount to a denial of equal protection of the laws by persons acting under color of state law." *Dinwiddie v. Brown,* 230 F.2d 465, 469 (5th Cir.), *cert. denied,* 351 U.S. 971, 76 S.Ct. 1041, 100 L.Ed. 1490 (1956). Conduct by state officers which results in delay in the prosecution of an action in state court may cause such prejudice. As we stated in *Rheuark v. Shaw,* 628 F.2d 297 (5th Cir.1980), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981):

> Delay haunts the administration of justice. It postpones the rectification of wrong and the vindication of the unjustly accused. It crowds the dockets of the courts, increasing the costs for all litigants, pressuring judges to take short cuts, interfering with the prompt and deliberate disposition of those causes in which all parties are diligent and prepared for trial, and overhanging the entire process with the pall of disorganization and insolubility. But even these are not the worst of what delay does. The most erratic gear in the justice machinery is at the place of fact finding, *and possibilities for error multiply rapidly* as time elapses between the original fact and its judicial determination.

*Id.* at 303–04 n. 10 (quoting *Southern Pacific Transportation Co. v. Stoot,* 530 S.W.2d 930, 931 (Tex.1975) (emphasis added).

The actions of the defendants may also have amounted to a violation of the Louisiana Constitution, which provides in section 22 of its Declaration of Rights that "every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, *or unreasonable delay,* for injury to [his] . . . property . . . ." La.Const. art. I, § 22 (emphasis added).

■ An action for conspiracy may be maintained under section 1983. *Slavin v. Curry,* 574 F.2d 1256, 1261 (5th Cir.), *modified,* 583 F.2d 779 (5th Cir.1978). However, federal courts view conspiracy claims under section 1983 differently than similar claims under section 1985. We explained this important distinction in *Nesmith v. Alford,* 318 F.2d 110 (5th Cir.1963), *cert. denied,* 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964):

> In the Plaintiff's complaint and in the pretrial order outlining the issues for the trial then to be held * * * the Plaintiffs asserted the theory of a conspiracy among the several police officers and city officials to violate their Civil Rights. Of course, for a claim under § 1983, a conspiracy as such is not an indispensable element as it is under § 1985. *But it may be charged as the legal mechanism through which to impose liability on each and all of the Defendants* without regard to the person doing the particular act. Conspiracy is asserted in that situation on more or less traditional principles of agency, partnership, joint venture, and the like.

*Id.* at 126 (emphasis added). We applied the same principle in *Mansell v. Saunders,* 372 F.2d 573, 576 (5th Cir.1967):

> We hold that appellants stated causes of action under 42 U.S.C.A. § 1983. This statute embraces deprivation or [sic] both due process of law and equal protection of the laws, and the action charged was under color of state law. * * * It contemplates such deprivation through the unconstitutional application of a law by a conspiracy or otherwise.

*See also Mizell v. North Broward Hospital District,* 427 F.2d 468, 472 (5th Cir.1970).

■ Applying these principles to our case, we cannot say with certainty that there is no possibility that any set of facts which might be proved in support of the allegations would entitle the Rylands to some relief. Therefore, it was error by the district court to dismiss the complaint. First, the complaint alleges that the defendants successfully covered up Lavonna's

murder for a period of eleven months. Thus, a fact finder could conclude that the alleged conspiracy to obstruct justice and/or deny the Rylands their constitutional rights was actually carried out. We reject the argument by the defendants that they are not liable because they did not intend to harm the Rylands by their actions. It is well settled that there is no requirement of specific intent in actions under section 1983. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967). The defendants' actions could have prejudiced the Rylands' chances of recovery in state court because the resulting delay would cause stale evidence and the fading of material facts in the minds of potential witnesses. Moreover, it could well prove more expensive to litigate such action. Finally, any interference with a substantive constitutional right, such as the right of access to the courts, may by itself amount to a constitutional deprivation (unless reasonably justified by a countervailing state interest).

*Immunity:*

■ The district court held that the defendants were shielded by absolute immunity because their actions were taken in their role as prosecutors. We disagree. Prosecutors are immune from damage actions brought for conduct performed in the role of a prosecutor. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). However, the Supreme Court in *Imbler* left open the question whether this immunity extends to actions in which the prosecutor acts as an investigator or administrator, rather than as an advocate. 96 S.Ct. at 995. We answered this question in *Marrero v. City of Hialeah,* 625 F.2d 499 (5th Cir.1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). After examining relevant Supreme Court decisions since *Imbler,* and the policies underlying the immunity defense and section 1983, we held that "a prosecutor is not entitled to absolute immunity when he engages in activities outside his quasi-judicial role." 625 F.2d at 510. Instead, we held that, under certain condi-

tions, a prosecutor may be entitled to qualified immunity. *Id.* For example, if a prosecutor performs functions analogous to those of a policeman, he is entitled to assert the defense of qualified immunity. *Id.* We expressed no opinion "as to whether a prosecutor may lose his qualified privilege through abuse of the privilege." 625 F.2d at 511 n. 16. We need not address this issue at present because we conclude that, under the allegations in this case, the district court erred in holding that the defendants were entitled to assert the defense of absolute immunity. Therefore, the case must be remanded.

■ In *Marrero,* we held that "it is the official *function* that determines the degree of immunity required, not the *status* of the acting officer." 625 F.2d at 508 (emphasis in original). Imposing liability upon a prosecutor for actions "outside his quasi-judicial role would not interfere with the independence of his quasi-judicial functions of deciding which suits to bring and conducting them in court." *Id.* at 509. We hold that the alleged actions of the defendants in falsifying the death certificate and in covering up the murder for a period of eleven months, if proven, were actions performed outside their role as prosecutors. *See Bell v. City of Milwaukee,* 514 F.Supp. 1363, 1372 (E.D.Wis.1981). Characterizing these actions as akin to those traditionally undertaken by officers of the court (which would entitle them to assert absolute immunity) would make a mockery of the judicial system. Accordingly, we reverse the district court's holding that the defendants were entitled to the defense of absolute immunity. On remand, the court should determine whether the actions of the prosecutors would entitle an ordinary prosecutor to qualified immunity. Should the court answer this question in the affirmative, it should then decide whether these particular defendants abused their privilege to assert qualified immunity. An affirmative answer to this question would require the court to address the issue whether, under these circumstances, these defendants are entitled to *any* immunity defense. Finally,

should the court conclude that these defendants are entitled to qualified immunity, it should then determine whether their actions "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1983).

*Conclusion:*

██ For the reasons stated above, we remand the case to the district court for proceedings consistent with this opinion. We intimate no opinion whether the Rylands, should they prove their claim for a constitutional deprivation, have presented a claim for serious damage. It is not clear whether, by delaying the Rylands' access to the state courts, the defendants have caused actual injury. The rule in our circuit is that in the absence of proof of actual injury, a plaintiff who has been deprived of his constitutional rights may only collect nominal damages. "Mere proof of the violation of a right will not support an award of [compensatory] damages." *Familias Unidas v. Briscoe,* 619 F.2d 391, 402 (5th Cir.1980). However, claims of mental and emotional distress, if proven, can support an award of compensatory damages. *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978). Moreover, the societal interest in deterring or punishing violators of constitutional rights supports an award of punitive damages even in the absence of actual injury. *Wilson v. Taylor,* 658 F.2d 1021, 1033 (5th Cir.1981); *McCulloch v. Glasgow,* 620 F.2d 47, 51 (5th Cir.1980). Finally, an award of nominal damages may support an award of attorney's fees under section 1988. *Basiardanes v. City of Galveston,* 682 F.2d 1203, 1220 (5th Cir.1982).

REVERSED AND REMANDED.