**Howard J. HARRELL and Sarah J. Harrell, Plaintiffs,**

v.

**CITY OF JACKSONVILLE, and Illinois Municipal Corporation, Donald Cook, Jack Woods, John Keehan, and a police officer unknown to Plaintiffs, Defendants.**

No. 97–3056.

United States District Court, C.D. Illinois, Springfield Division.

Sept. 5, 1997.

Charles W. Courtney, Jr., Belleville, IL, for Plaintiffs.

Kenneth D. Reifsteck, Champaign, IL, for Defendants.

### OPINION

RICHARD MILLS, District Judge:

Plaintiffs assert that Defendants bungled the investigation of a robbery which occurred at their house.

Can Plaintiffs maintain a § 1983 action because of it?

Under these circumstances: Yes.

## I. FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT

Plaintiffs, Howard J. Harrell and Sarah J. Harrell, are husband and wife. The Harrells own a single family home at .1007 Routt Street, Jacksonville, Illinois. Prior to July 11, 1995, the Harrells buried a sum of money in two containers in the crawl space underneath their home.

Between January 9, 1991 and July 11, 1995, the Harrells hired certain contractors to perform some work on their residence. In order for the contractors to complete the work, one of the contractors entered the crawl space underneath the Harrell's home. From January 9, 1991 to July 11, 1995, only one party (other than the Harrells) had access to the location where the funds were buried. On July 11, 1995, the Harrells discovered that one of the containers had been unearthed and that cash totaling $95,854.70 had been taken.

On July 20, 1995, the Harrell's representative met with Jacksonville's Assistant Police Chief John Keehan. At this meeting, the Harrells gave Assistant Chief Keehan the cooler chest and all of the containers which had contained their buried money. Assistant

Chief Keehan advised the Harrells that he would have the items tested for fingerprints and that the contractor who had worked in the crawl space underneath their house was his prime suspect. The next day, Assistant Chief Keehan told the Harrells that he would send an investigator to their home to pursue their lost money. After this meeting, the Harrells and their representative met with Jacksonville Police Officer Don Cook several times to discuss the case and to provide Officer Cook with evidence.

On August 9, 1995, Jacksonville Police Officer Jack Woods took photographs of the Harrell's home to use in the investigation. At that time, Officer Woods informed the Harrells that the Jacksonville Police Department had lost all of the evidence which the Harrells had provided to the Department. Although the Department maintained an evidence room where all evidence in the Department's possession was required to be stored and logged, Assistant Chief Keehan, Officer Woods, Officer Cook, and other Jacksonville Police Officers unknown to the Harrells observed the Harrell's evidence stored in the Department's garage. However, none of the officers took the evidence to the Department's evidence room. Furthermore, although the Harrells asked for an investigation into the loss of their evidence, the Department conducted no such investigation.

The Harrells now bring the above-captioned matter claiming that the City of Jacksonville and its police officers have violated their rights pursuant to 42 U.S.C. § 1983. The Harrells assert that the City's and its officers' actions and inactions have deprived them of any meaningful access to the courts in order to proceed against the party or parties responsible for the theft of their funds. Finally, the Harrells argue that the City and its Police Department maintain a custom or policy of not investigating citizen complaints of wrongdoings by the police force.

## II. LEGAL STANDARD FOR MOTIONS TO DISMISS

██ In ruling on a motion to dismiss, the Court "must accept well pleaded allegations of the complaint as true. In addition, the Court must view these allegations in the light most favorable to the plaintiff." *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). Although a complaint is not required to contain a detailed outline of the claim's basis, it nevertheless "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984). Mere conclusions, without supporting factual allegations, are insufficient to support a claim for relief. *Cohen v. Illinois Institute of Technology*, 581 F.2d 658, 663 (7th Cir. 1978). Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

## III. ANALYSIS

### A. COUNTS I & II

██ Defendants argue that Counts I & II of Plaintiffs' First Amended Complaint fail to state a cause of action upon which relief can be granted. Defendants assert that Plaintiffs have no constitutional right to an investigation of their claims by police, to the placement of evidence into an evidence room, or to the enforcement of internal policy regarding the keeping of evidence. Defendants also claim that they are protected from this suit based upon the doctrine of qualified immunity. Accordingly, Defendants state that Counts I & II should be dismissed.

Plaintiffs argue that Defendants' motion to dismiss misstates their theory of the case. Plaintiffs state that they are not claiming that Defendants' actions/inactions have deprived them of their right as citizens to see thieves prosecuted; rather, Plaintiffs claim that Defendants' actions/inactions have deprived them of their right to any meaningful access to the civil courts to seek redress from the theft of their money. By losing the only evidence available, Plaintiffs argue that Defendants have destroyed any meaningful access to the civil courts. Plaintiffs assert that

when taking the facts in a light most favorable to them, they have stated a cause of action upon which relief may be granted.

■ "Liability under § 1983 requires proof of two essential elements: that the conduct complained of (1) 'was committed by a person acting under color of state law' and (2) 'deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir.1994), quoting *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 331–32, 106 S.Ct. 662, 664–66, 88 L.Ed.2d 662 (1986). Defendants do not challenge Plaintiffs' allegation that they acted under color of state law. Thus, the Court must identify the specific constitutional injury suffered by Plaintiffs. *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir.1994).

■ Plaintiffs argue that the constitution deprivation suffered was the denial of the right of any meaningful access to the courts. "The right of individuals to pursue legal redress for claims which have a reasonable basis in law and fact is protected by the First and Fourteenth Amendments." *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir.1995); *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741, 103 S.Ct. 2161, 2168–69, 76 L.Ed.2d 277 (1983). In *Ryland v. Shapiro*, 708 F.2d 967 (5th Cir.1983), the United States Court of Appeals for the Fifth Circuit held that the right of access to the courts is guaranteed and is protected from the unlawful interference and deprivations of the state. *Id.* at 972; *see Chambers v. Baltimore & Ohio R.R.*, 207 U.S. 142, 148, 28 S.Ct. 34, 35, 52 L.Ed. 143 (1907). The Seventh Circuit has agreed with and has adopted the Fifth Circuit's findings in *Ryland. See Bell v. City of Milwaukee*, 746 F.2d 1205, 1260–61 (7th Cir.1984).

■ Therefore, when taking the facts in a light most favorable to Plaintiffs, the Court finds that Plaintiffs have stated a cause of action upon which relief may be granted. "Interference with the right to access to the courts gives rise to a claim for relief under section 1983." *Ryland*, 708 F.2d at 972. Moreover, the "[j]udicial access must be adequate, effective, and meaningful." *Vasquez*, 60 F.3d at 328, quoting *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977). The loss of Plaintiffs' evidence, at the very least, made Plaintiffs' state law cause of action for conversion less likely to succeed. *See Sigafus v. Brown*, 416 F.2d 105 (7th Cir.1969) (holding that the destruction by a prison guard of a prisoner's legal papers necessary for an appeal supports a claim for damages under § 1983). Accordingly, Defendants' motion as to Counts I & II of Plaintiffs' First Amended Complaint is denied.

■ Furthermore, the Court finds that Defendants are not protected by the doctrine of qualified immunity. Qualified immunity shields government officials who are performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Whether the defendants will be protected by qualified immunity "turns on the 'objective legal reasonableness' of the action, *Harlow*, 457 U.S., at 819 [102 S.Ct., at 2739], assessed in light of the legal rules that were 'clearly established' at the time it was taken, *id.*, at 818 [102 S.Ct., at 2738]." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). As the United States Supreme Court stated in *Anderson:*

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ...; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* at 640, 107 S.Ct. at 3039 (citations omitted).

In the case at bar, Defendants' actions/inactions of which Plaintiffs complain occurred in 1995. *Bell* and *Ryland* were decided in

1984 and 1983 respectively. Therefore, the constitutional right of access to the civil courts without interference from the state was clearly established prior to Defendants' alleged actions/inactions. Furthermore, the Court finds that a reasonable official in Defendants' position would have understood what he was doing violated Plaintiffs' constitutional right. Accordingly, the Court finds that Defendants are not protected by the doctrine of qualified immunity.

### B. *COUNT III*

■ Defendants also argue that Count III of Plaintiffs' First Amended Complaint fails to state a cause of action upon which relief can be granted. Defendants assert that in order for Defendant City of Jacksonville to be held liable pursuant to § 1983, Plaintiffs must establish that the City had a custom or policy which was causally responsible for Plaintiffs' alleged constitutional deprivation. Defendants state that the only policy or custom which Plaintiffs have alleged (*i.e.*, that Defendants do not investigate citizen complaints against the police force) is not causally related to Plaintiffs' alleged constitutional deprivation. Accordingly, Defendants state that Count III should be dismissed.

Plaintiffs argue that Count III does state a claim upon which relief can be granted. Plaintiffs assert that the City's custom and practice of maintaining an Internal Affairs Officer but not to investigate citizen complaints, combined with the loss/theft of their evidence, deprived them of their constitutional right of meaningful access to the courts.

In *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court held that a local government may not be sued under § 1983 based upon a theory of *respondeat superior*. *Id.* at 694, 98 S.Ct. at 2037–38. Rather, the plaintiff must point to some policy or custom which inflicted an injury that the local government as an entity is responsible for under § 1983. *Id.*

In the instant case, although Plaintiffs pointed to a policy or custom, that policy or custom had nothing to do with Plaintiffs' alleged constitutional deprivation. The City's alleged policy of failing to investigate citizen complaints has no relationship to Plaintiffs' alleged deprivation of the right of access to the courts. Furthermore, Plaintiffs have not alleged that Defendants' maintained a policy or custom to deny citizens access to the civil courts. Plaintiffs' attempt to boot strap and to combine their alleged deprivation with an unrelated City policy or custom is insufficient under *Monell.*

Accordingly, the Court finds that Count III of plaintiffs' First Amended Complaint fails to state a cause of action upon which relief may be granted. Therefore, pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants' motion as to Count III is allowed.

*Ergo,* Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint is ALLOWED in part and DENIED in part. Defendants' motion as to Counts I & II of Plaintiffs' First Amended Complaint is DENIED. Defendants' motion as to Count III of Plaintiffs' First Amended Complaint is ALLOWED. Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant City of Jacksonville, an Illinois Municipal Corporation, is hereby DISMISSED WITHOUT PREJUDICE.