[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 11, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-10200

_____

D. C. Docket No. 00-00313-CV-3-J-20A

SHELTON CHAPPELL,
MARTHA BOLDEN,
RUTHIE MONTERO,
JACKIE WILLIAMS,
PAULA BURNS,
all individually and as Personal Representatives
of the Estate of Johnnie Mae Chappell,
ALONZO CHAPPELL,
ERNEST CHAPPELL,

Plaintiffs-Appellants,

versus

J. W. RICH,
WAYNE M. CHESSMAN,
ELMER KATO,
JAMES ALEX DAVIS,
all individually,
NATHANIEL GLOVER,
Sheriff of Duval County, Florida as successor to
Dale Carson,
DALE CARSON,
as former Sheriff of Duval County, Florida,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

**(August 11, 2003)**

Before BARKETT, MARCUS and ALARCON[*], Circuit Judges.

PER CURIAM:

The adult children of Johnnie Mae Chappell ("Chappell children") appeal the district court's dismissal of their complaint asserting constitutional claims under 42 U.S.C. §§ 1983 and 1985. They contend that their cause of action for denial of access to the courts is not time-barred and that their complaint alleges facts sufficient to state a claim.

According to the complaint, Johnnie Mae Chappell, an African-American woman, was shot and killed on March 23, 1964, by four white men during a drive-by shooting in a period of racial unrest in Jacksonville, Florida. Following an investigation at the crime scene, no action was taken by the Duval County Sheriff's Office until about August 10, 1964, when two detectives in the Sheriff's Office inadvertently obtained a confession, as well as the murder weapon, from one of the four men while investigating another case. Unable to find any detectives working

---

[*]Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting by designation.

2

on the Chappell case, the two detectives, C. Lee Cody and Donald R. Coleman, searched for the investigative file, discovering it underneath the desk chair floor pad in Chief of Detectives J.C. Patrick's office. Detectives Cody and Coleman brought the matter to the attention of Sheriff Dale Carson, who assured them he would look into it. Shortly thereafter, Chief Patrick removed Detectives Cody and Coleman from the Chappell murder investigation, and they were reassigned.

In September 1964, J.W. Rich, Elmer Kato, Wayne Chessman, and James Alex Davis were indicted for Mrs. Chappell's murder. Rich was tried separately and convicted of manslaughter. The state then moved for entry of nolle prosequi for Kato, Chessman, and Davis, citing insufficient evidence for trial.

On March 23, 1996, former detective Cody informed members of the Chappell family for the first time about the alleged interference by the Sheriff's Office in the Chappell investigation. The Chappell children filed their complaint on March 23, 2000 against the former and current Sheriffs of Duval County and the four men arrested in connection with their mother's death, alleging deprivation of their civil rights solely because of their race in violation of 42 U.S.C. §§ 1981, 1983, 1985(2) and (3), and 1986. They alleged that the Sheriff's Office obstructed legitimate efforts to investigate Mrs. Chappell's death and conspired with the four criminal defendants to misplace and tamper with evidence, thereby depriving them

of, among other things, their right of access to the courts to assert a wrongful death claim. Their ability to assert their claims was prejudiced, they alleged, because they were unaware that the Defendants had tampered with evidence, removed Detectives Cody and Coleman from the investigation, failed to investigate actively Mrs. Chappell's murder, failed to perform ballistics tests on the weapon recovered by the detectives, and failed to enter the murder weapon into evidence at Rich's trial. They also alleged that the conspiracy was ongoing, evidenced in part by the fact that neither the Jacksonville Sheriff's Office nor the State Attorney's Office has a file on the Chappell case and that no transcripts of the proceedings have been preserved.[1]

The district court granted the Defendants' motion to dismiss, determining that the Chappell children had failed to state a claim under 42 U.S.C. §§1983 and 1985 because they could not establish that they had been denied access to the courts. It noted that the Chappell children knew the identity of the four criminal defendants in 1964 and that no act of the Sheriff's Office interfered with their ability to bring a wrongful death claim against those criminal defendants at that time. In addition, the district court found that the statute of limitations barred the Chappell children's claims, because they knew or should have known of those

---

[1]Subsequent to the events in this case, the Duval County Sheriff's Office merged with the City of Jacksonville Police Department to become the City of Jacksonville Sheriff's Office.

claims and of their injuries within four years of Mrs. Chappell's death. Moreover, the district court concluded that the section 1985 claims against the Sheriff's Office failed under the intracorporate conspiracy doctrine.

On appeal, the Chappell children contend first that their cause of action for denial of access to the courts accrued not in 1964 but on March 23, 1996, when Detective Cody first informed them that the Sheriff had hidden the investigative file on their mother's murder. In addition, they argue that the district court erred in finding that they failed to state a claim under sections 1983 and 1985. Finally, they argue that their allegations of a conspiracy between the four private individuals and the members of the Duval County Sheriff's Office defeat the intracorporate conspiracy doctrine.

We review the dismissal of a complaint for failure to state a claim de novo, applying the same standard as the district court. Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). We must accept the allegations set forth in the complaint as true for the purposes of a motion to dismiss. Id.

DISCUSSION

Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth

Amendment, and/or the Fourteenth Amendment. Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002) (noting the Supreme Court's past reliance on all of these bases); see also Bank of Jackson County v. Cherry, 980 F.2d 1362, 1370 (11th Cir. 1993) (grounding the right of access to courts in the First Amendment). To pass constitutional muster, access to the courts must be more than merely formal; it must also be adequate, effective, and meaningful. Ryland v. Shapiro, 708 F.2d 967, 972 (5th Cir. 1983) (citing Bounds v. Smith, 430 U.S. 817, 822 (1977)). In Bell v. Milwaukee, the Seventh Circuit observed that to deny access to the courts,

> defendants need not literally bar the courthouse door or attack plaintiffs' witnesses. This constitutional right is lost where, as here, police officials shield from the public and the victim's family key facts which would form the basis of the family's claims for redress. A contrary interpretation of the right to due process would encourage police officials to conceal the circumstances relating to unlawful killings committed under color of state law and other deprivations of federal rights which Section 1983 was designed to remedy.

746 F.2d 1205, 1261 (7th Cir. 1984). Thus, interference with the right of court access by state agents who intentionally conceal the true facts about a crime may be actionable as a deprivation of constitutional rights under 42 U.S.C. §§ 1983 and 1985. See Flores v. Satz, 137 F.3d 1275, 1278 n.7 (11th Cir. 1998) (distinguishing between officials who intentionally conceal facts and those who fail to investigate fully); Ryland, 708 F.2d at 973 (allegation "that agents of the state intentionally engaged in conduct that interfered with [the plaintiffs'] exercise of their

6

constitutionally protected right to institute a wrongful death suit" offered a valid theory of recovery).

Florida's four-year statute of limitations applies to such claims of deprivation of rights under 42 U.S.C. §§ 1983 and 1985. See City of Hialeah v. Rojas, 311 F.3d 1096, 1102 n.2 (11th Cir. 2002) ("Section 1983 claims are governed by the forum state's residual personal injury statute of limitations, which in Florida is four years"); Newberger v. U.S. Marshal Serv., 751 F.2d 1162, 1166 (11th Cir. 1985) (applying the four-year intentional tort statute of limitations to section 1985 claims of conspiracy). A cause of action under these sections will not accrue, and thereby set the limitations clock running, until the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury. See Mullinax v. McElhenny, 817 F.2d 711, 716 (11th Cir. 1987).

Thus, although denial of access is an ancillary claim, requiring that plaintiffs also plead a substantive underlying claim, see Harbury, 536 U.S. at 415, the statute of limitations for denial of access may be different than that of the underlying claim, beginning to run only when the plaintiffs knew or should have known that they have suffered injury to their right of access and who caused it. The Chappell children argue that in this case their allegations reflect that they did not know or

could not have known of their denial of access to the courts a result of the actions of the Sheriff's Office to conceal information until 1996.

However, when we examine the allegations of the complaint here, we conclude that they are insufficient to support the claim, and because there is no denial of access claim, its statute of limitations period is moot. The Chappell children knew that their mother had been murdered, who the alleged perpetrators were, and that Rich had been convicted of manslaughter for this killing before the statute of limitations for a wrongful death suit expired. Cf. Paige v. Police Dep't of the City of Schenectady, 264 F.3d 197, 199-200 (2d Cir. 2001) (finding that, despite a police cover-up, the plaintiff had enough information to bring an assault claim before the statute of limitations expired). Although access to the concealed evidence might have strengthened their case, the Chappell children do not allege that they were or would have been prevented from filing a wrongful death suit within the statute of limitations period, nor that the Defendants' actions would have made such a suit inadequate, ineffective, or not meaningful.

This case is thus unlike the circumstances in Ryland v. Shapiro, 708 F.2d 967, or Bell v. Milwaukee, 746 F.2d 1205, in which the plaintiffs successfully alleged denial of access to the courts. In Ryland, Lavonna Ryland's parents did not know that a crime had been committed because the police had concealed their

8

daughter's murder as a suicide. Likewise, in <u>Bell</u>, the family's attempt to seek redress for Daniel Bell's wrongful death was thwarted by the false police representation that the Bell shooting was in self-defense.

In this case, the tragic death of Johnnie Mae Chappell and the inexcusable conduct of the Defendants, as alleged, are sad reminders of the damage done to the integrity of our justice system and to our society by racial hatred and strife. However, based on the foregoing discussion, we cannot find that the facts alleged here are sufficient to constitute a violation of the right of access to the courts. Therefore, we agree with the district court that the Chappell children have failed to state a claim for denial of the right of access to the courts under sections 1983 and 1985. As a result, we do not need to reach the question of whether the intracorporate conspiracy doctrine would bar the conspiracy claim under section 1985. We thus AFFIRM the district court's dismissal of the Chappell children's section 1983 and 1985 claims.

**AFFIRMED.**