STEVENSON, J.
Appellant, Shirley Burgess, brought this action below to recover damages for the *432 death of her husband while a patient at North Broward Hospital District d/b/a Broward General Medical Center (“the Hospital”). In this appeal, Burgess challenges an order dismissing with prejudice her claim under 42 U.S.C. § 1983 for denial of access to the courts against the Hospital and Amos Stoll, M.D. (collectively “the Defendants”). Because the complaint failed to allege sufficient facts demonstrating that the Defendants frustrated the presentation of a non-frivolous claim, we affirm.

Procedural Background and Facts

The “facts” herein are derived from the Fourth Amended Complaint (“the complaint”) and, for purposes of this decision, are taken as true. Shirley Burgess and the decedent, Elliott Burgess, were married on October 15, 2006. While on their honeymoon cruise, Elliott began experiencing headaches. The Burgesses disembarked at Port Everglades on Friday, October 20, 2006. On October 21, 2006, Elliott was taken by ambulance (with Shirley) to the Hospital’s Emergency Room. After a CT scan, the Burgess-es were informed by an ER physician that Elliott needed emergency surgery, and that a neurosurgeon would meet with them to discuss his condition and the procedure to be performed. Dr. Amos Stoll met with the Burgesses and advised them that Elliott had a subdural hemato-ma, which required a surgical procedure to allow the blood clot to drain. Elliott underwent the procedure. However, his brain had swollen and was filled with fluid and his condition did not improve. On October 23, 2006, Dr. Stoll informed Burgess that her husband was brain dead.
On October 25, 2006, Burgess asked Dr. Stoll if an autopsy would be performed and he informed her that it would not. On the death certificate, Dr. Stoll certified that the manner of death was “natural,” that an autopsy was not performed, and that the causes of death were “trantentorial herniation/thalasemia” and “right hemisphere chronic subdural hematoma (no trauma).” On October 26, 2006, an autopsy was in fact performed, and the pathologist opined that the manner of death was an “accident” and that Elliott died “as a result of complications of penetration of the right cerebrum, due to burr hole trauma during a craniotomy for drainage of a subdural hematoma.”
On January 16, 2008, Burgess, through counsel, requested that Defendants provide, among other things, copies of “[a]ll documents, which identify and are relative to the seléction, purchase, and maintenance of all of the devices, tools, or instruments, not limited to but including, the drill(s) used to create a burr hole .... ” The Defendants did not respond to Burgess’s request. Burgess then filed a complaint for true bill of discovery on April 17, 2008, and served on the Hospital a notice and amended notice of intent to initiate medical malpractice litigation on July 25, 2008, and August 11, 2008, respectively. Subsequently, on August 26, 2008, Burgess received from the Hospital 243 pages of copies of records relating to Elliott Burgess, 236 pages of which were “ostensibly” the medical records of Elliott Burgess.
The complaint alleged that pursuant to applicable state and federal regulatory law, the Defendants were required to complete the following reports:
• a report by Dr. Stoll to the risk manager at the Hospital concerning the complications of the surgery, which were an “adverse incident” causing injury and death;
• a report by the risk manager of said complications to the Agency for Healthcare Administration for the State of Florida (ACHA);
*433 • a report by the Hospital of said complications to the Joint Commission in Accreditation of Healthcare Organization (JCAHO); and
• a report by the Hospital of the complications or information related to the medical device(s) being used to effectuate the burr hole to both the Secretary of the Food and Drug Administration (FDA) and the manufacturer of the device(s).
Burgess alleged that the Defendants were required by applicable law to provide her with copies of the aforementioned reports and documents. The complaint further alleged that “[n]otwithstanding the applicable law which requires the existence of these documents, [the Defendants] state through their counsel that these documents do not exist or no longer exist.”
As a result of the failure to produce the requested state and federal regulatory reports and related documents, Burgess maintained that the Defendants “spoliated evidence” or “intentionally concealed true facts.” Burgess alleged that the Defendants’ actions in concealing and spoliating evidence concerning the device used during the surgery prevented her from identifying any potential product liability defendants responsible for her husband’s death and rendered her unable to bring suit against those parties.
The Defendants filed motions to dismiss the complaint with prejudice, arguing, in relevant part, that Burgess failed to demonstrate that the Defendants’ actions denied Burgess adequate, effective, and meaningful access to the courts and, therefore, failed to state a cause of action, (citing Heinrich ex rel. Heinrich v. Sweet, 62 F.Supp.2d 282, 315 (D.Mass.1999)). The motions also asked for dismissal with prejudice because the complaint failed to differ from the previous complaints in any meaningful way. The trial court granted the motions and dismissed the complaint with prejudice as to both Defendants. Appellant does not take issue with the dismissal of counts I and II (medical negligence claims against the Hospital and Dr. Stoll). This appeal is limited to consideration of the dismissal of count III, alleging an actionable civil rights violation under federal law.

Standard of review

Burgess insists that the trial court erroneously dismissed her denial of access to courts claim with prejudice since she alleged the elements required to state a viable cause of action. The standard of review of orders granting motions to dismiss with prejudice is de novo. MEBA Med. & Benefits Plan v. Lago, 867 So.2d 1184, 1186 (Fla. 4th DCA 2004). This court must accept the allegations set forth in the complaint as true and all inferences that reasonably can be drawn from those facts must be drawn in favor of the pleader. Id. (citing Taylor v. City of Riviera Beach, 801 So.2d 259 (Fla. 4th DCA 2001)).
To state a cause of action for violation of § 1983, a plaintiff must allege that a person, acting under color of state law, deprived her of rights protected under the federal constitution or federal laws. Lindquist v. Woronka, 706 So.2d 358, 360 (Fla. 4th DCA 1998). It is well-settled that the right of access to the courts is protected from unlawful interference and deprivations by the state and its actors by the federal constitution. Ryland v. Shapiro, 708 F.2d 967, 972 (5th Cir.1983). “A mere formal right of access to the courts does not pass constitutional muster. Courts have required that the access be ‘adequate, effective, and meaningful.’ ” Id. (quoting Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977)).

Discussion

We hold that, in the instant case, the trial court properly dismissed the com *434 plaint for failure to state a § 1983 claim for denial of access to the courts. Christopher v. Harbury, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (hereinafter “Harbury ”), is instructive on the elements necessary to state a cause of action in a so-called “backward-looking” access claim, such as the instant one, where the alleged denial leads to loss of a meritorious suit that cannot now be tried. According to Harbury, a party must identify: (1) a “nonfrivolous,” “arguable” underlying claim, whether anticipated or lost; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense, but that is not otherwise available in future suit. Id. at 415-16, 122 S.Ct. 2179.
Most notably, Burgess fails in meeting the requirements of prong 2 of the Harbury test, i.e., the identification of specific “official acts frustrating the litigation.” The facts here are a far cry from those in Ryland, cited by Burgess, where the court found a denial of access to courts claim sufficient to state a cause of action. 708 F.2d at 973-74. There, the plaintiffs alleged a conspiracy by the defendants, a Louisiana District Attorney and an assistant District Attorney, to cover-up the murder of their daughter. Id. at 969. The plaintiffs alleged that the defendants prevented a full investigation into their daughter’s death by cancelling an autopsy previously scheduled to be performed by a local coroner, by seeking to obtain the signatures of various deputy coroners and doctors on a death certificate that falsely listed the cause of death as suicide, and by ultimately persuading the coroner to sign a report which listed the death as a suicide, even though he had never examined the body. The plaintiffs maintained that the defendants engaged in the conspiracy to protect the real killer, Alfred Shapiro, an assistant District Attorney. The cover-up was eventually exposed by the Attorney General of Louisiana, and Shapiro was convicted of the crime. Id. The court concluded that the defendants’ cover-up, which lasted almost a year, may well have denied the plaintiffs an effective and meaningful right of access to the courts by interfering with their right to pursue a wrongful death claim against Shapiro under Louisiana law. Id. at 975.
Here, Burgess alleges that the hospital failed to file, or provide her with, certain reports required by state and federal regulatory agencies. From those facts, the complaint leaps to the conclusion that the defendants “spoliated evidence” and “intentionally concealed true facts.” It seems to us that, at best, the allegations in the complaint raise the possibility of negligence or misfeasance on the part of the Defendants. The United States Supreme Court has stated that negligent acts or omissions will not support a federal cause of action under § 1983. See Daniels v. Williams, 474 U.S. 327, 330, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (“To hold that injury caused by [lack of due care] is a deprivation within the meaning of the Fourteenth Amendment would trivialize the century-old principle of due process of law.”).[1]
Burgess also fails to meet the first prong of Harbury because there is nothing alleged in the complaint to indicate that her products liability cause of action is anything “more than hope.” 536 U.S. at *435 416, 122 S.Ct. 2179. Harbury requires that “the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant” and that pleaders must state the underlying claim “just as if it were being independently pursued.” Id. at 416-17, 122 S.Ct. 2179.
Here, Burgess alleges that the actions of the Defendants have denied her access to court to sue the “manufacturer(s), distribu-ter(s) and others involved in the claim of distribution of the device that was used to effectuate the burr hole trauma during the craniotomy,” but no element of an underlying products liability claim is alleged. There is no indication in Burgess’s complaint that the device used in Elliott’s surgery malfunctioned in any way. Burgess’s general allegation that the documents “would/should have additional information in support of the Plaintiffs claims against these defendants” and “information indis-pensible to the claims that the plaintiff otherwise would have against the other potential defendants” does little to demonstrate that the Defendants’ actions rendered any specific suit ineffective — a requirement under prong 1 of Harbury.
Burgess’s complaint simply does not demonstrate the existence of a “non-frivolous” and “arguable” products liability claim. Burgess argues that she should “not be faulted in this regard” since it was the Defendants wrongdoing that “prevented her from further exploring the merits of such a claim” in the first place. In other words, Burgess argues that the Defendant’s wrongful conduct under Har-bury ⅛ prong 2 (official acts frustrating the litigation) has prevented her from meeting the requirements of prong 1 (the identification of a non-frivolous, arguable underlying claim). We understand Burgess’s frustration, but, even with the most liberal reading, the complaint cannot be fairly read to support the inference that the Defendants’ actions impeded or foreclosed all reasonable avenues Burgess had to explore the potential merits of an “arguable” products liability claim. For example, Burgess had information regarding all the medical staff present at Elliott’s surgery, including Dr. Stoll, who could have been questioned regarding the device at issue.
The Defendants further assert that Burgess’s claim fails under prong 3 as well because she had a viable state law remedy — a cause of action for spoliation of evidence — which remained available for a future suit at the time she filed her initial complaint for denial of access to court. Harbury, 536 U.S. at 415, 122 S.Ct. 2179; see, e.g., Royal & Sunalliance v. Lauderdale Marine Ctr., 877 So.2d 843 (Fla. 4th DCA 2004) (setting forth the elements of a spoliation of evidence claim). In response, Burgess merely points out that damages are capped in a state court action whereas no such cap exists in an action under § 1983. Neither party cites authority indicating whether a cap on damages renders a state law suit “inadequate, ineffective or not meaningful.” We need not decide the merits of this issue as the first two prongs of Harbury were not met.

Preservation and the denial of the request to amend

Burgess’s counsel maintained at oral argument that this court should not rely on Harbury since the Defendants did not cite the decision in their argument before the trial judge. In short, Burgess asserts that the Defendants’ reliance on Harbury was not preserved. We believe that this argument is unavailing in the instant case. First, we review the dismissal of the complaint de novo. Second, Burgess has had ample opportunity to fully research and brief the implications and impact of the Harbury case in this appeal. Third, the Harbury decision is simply an extension *436 and application of the core principles contained in the cases which were relied on below by the Defendants. In any event, the “tipsy coachman doctrine” would allow consideration of the Harbury decision in this appeal without any procedural prejudice to Burgess. See Arthur v. Milstein, 949 So.2d 1163, 1166 (Fla. 4th DCA 2007) (trial court may be affirmed on appeal when it reaches the right result for the wrong reason).
Burgess would like the opportunity to amend the complaint once more. The Defendants argue that the trial court properly dismissed Burgess’s complaint with prejudice because her previous two complaints contained identical allegations which were dismissed on the same grounds. “ ‘[A]mendment should be allowed until the privilege to do so has been abused or the opposing party is prejudiced or the amendment is futile.... Generally three ineffective attempts to state the same cause of action ... are enough.’ ” Walters v. Ocean Gate Phase I Condo., 925 So.2d 440, 443 (Fla. 5th DCA 2006) (quoting Trawick’s Fla. Practice & Procedure § 14-2 at 225 (2006)). Despite the title of “Fourth Amended Complaint,” Burgess was granted only two opportunities to amend rather than three. Still, we cannot say that the trial court abused its discretion in denying further amendment which would have been futile under Harbury.

Affirmed.-

WARNER and GERBER, JJ., concur.

. The Court in Daniels reviewed a prisoner’s claim that prison officials had violated his due process rights by negligently leaving pillows on prison stairs on which the prisoner slipped and injured himself. In a footnote, the Court left open "whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause.” 474 U.S. at 334 n. 3, 106 S.Ct. 662.