**Louis McDUFFY, Jr. and Brenda McDuffy, Plaintiffs,**

v.

**Noreen KOVAL, Lumbermen's Mutual Auto Insurance Company, Louis Marsico, Donna Lee Williams, Commissioner of Insurance and Baldo Sebastianelli, State Insurance Investigator, Defendants.**

No. CIV.A.00–938–SLR.

United States District Court, D. Delaware.

Sept. 30, 2002.

Louis McDuffy, Jr. and Brenda McDuffy, New Castle, Delaware. Plaintiffs, pro se.

Charles Slanina, Esquire of Tybout, Redfearn & Pell, Wilmington, Delaware. Counsel for defendants Noreen Koval and Lumbermen's Mutual Auto Insurance Company.

Louis B. Ferrara, Esquire of Ferrara, Haley, Bevis & Solomon, Wilmington, Delaware. Counsel for defendant Louis Marsico.

Marc P. Niedzielski, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for defendants Donna Lee Williams and Baldo Sebastianelli.

## MEMORANDUM OPINION

ROBINSON, Chief Judge.

### I. INTRODUCTION

Plaintiffs Louis McDuffy, Jr. and Brenda McDuffy filed this action against defendants Lumbermen's Mutual Auto Insurance Co. ("Lumbermens"), Noreen Koval (Claims Adjuster for Lumbermens), Louis Marsico, Donna Lee Williams (Commissioner of Insurance), and Baldo Sebastianelli (State Insurance Investigator). (D.I.1) On November 6, 2000, plaintiffs filed a complaint asserting claims against all defendants in their individual and official capacities under 42 U.S.C. §§ 1981, 1983, 1984, 1985(3) and 1986; as well as denial of access to the courts, violation of due process, and violation of equal protec-

tion claims. (*Id.*) Plaintiffs complaint asserts claims against defendants Lumbermens and Koval under state and federal RICO laws, as well as for breach of contract, bad faith breach of contract, breach of the duty of fair dealing, common law fraud and consumer fraud. (*Id.*) The court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1343 and 1347. Currently before the court are motions for summary judgment filed by defendants Lumbermens, Koval, Williams and Sebastianelli. (D.I.20, 23) For the following reasons, the court shall grant defendants' motions.

## II. BACKGROUND

### A. The McDuffy/Marsico Accident

On November 7, 1997, plaintiff Louis McDuffy stopped his Ford Taurus station wagon at a stop sign on the exit ramp leading from Route 13 southbound towards Old New Castle, attempting to enter onto Route 141 (Basin Road). (D.I. 1 at ¶ 17) Mr. McDuffy stated that he took his time turning onto Basin Road due to poor visibility on a "rainy and cloudy evening." (*Id.* at ¶¶ 17–18) Behind plaintiffs' vehicle sat a Jeep Grand Cherokee owned and occupied by defendant Louis Marsico and his wife, Geraldine Marsico. The following facts are disputed between plaintiffs and Mr. Marsico.

According to plaintiffs, Mr. Marsico "suddenly took off and smashed the back of Brenda McDuffy's 1986 Taurus Station Wagon, pushing us part way into the intersection." (*Id.* at ¶ 18) Mr. Marsico believed that he "just touched the back of the other," stating that "he wasn't even going 5 mph at the time." (D.I.17) However, it is undisputed that both parties eventually pulled into the Penn Mart Shopping Center. (D.I. 1 at ¶ 21; D.I. 17) Plaintiffs allege that Mr. Marsico asked them not to call the police and "swore that he would pay any damages and signed a paper admitting guilt," while Mr. Marsico believes that the police were not notified because the vehicles were not severely damaged. (D.I. 1 at ¶ 23; D.I. 17) Both parties timely filed claims with their respective insurance companies, for which Mr. Marsico's insurance company paid some costs due to liability of fault. (D.I. 1 at ¶ 26) Mrs. McDuffy also filed for Personal Injury Protection ("PIP") benefits for medical treatment and salary loss reimbursements as a result of the accident. (*Id.* at ¶ 29) Plaintiffs allege that defendant Noreen Koval "found an excuse not to pay" every time they tried to file the claim, and that defendant Lumbermens denied their claim without valid reason. (*Id.* at ¶¶ 30–34)

On November 12, 1997, Mr. Marsico gave a recorded interview to his insurance carrier during which he testified that only Mr. McDuffy was present in his vehicle at the time of the accident. (D.I.17, 21) Plaintiffs contend that Mrs. McDuffy was a front-seat passenger at the time of the accident, however, she was asked to get out of the vehicle because Mr. McDuffy was concerned about the possibility of gas leakage due to the accident. (D.I. 1 at ¶ 19) It is unclear from the record whether Mrs. McDuffy eventually walked to the Penn Mart Shopping Center or remained on the shoulder, but Mr. Marsico claims that she was not present. (D.I.21)

On January 24, 1998, the disputed matter was reported by Lumbermens to the Fraud Prevention Bureau of the Department of Insurance, as required by 18 Del. C. § 2408. (D.I.21) Subsequently, defendant Baldo Sebastianelli was assigned to investigate the disputed matter, but plaintiffs would not cooperate, eventually filing for Insurance Commissioner's Arbitration under 21 Del. C. § 2118. (*Id.*)

On January 31, 1998, Mrs. McDuffy was involved in a second accident, where Lumbermens also denied her application for

benefits. (D.I. 1 at ¶¶ 41, 47) Plaintiffs also filed for an arbitration hearing involving the second accident. (D.I.21)

On October 20, 1998, an arbitration hearing was conducted on plaintiffs' claims. (D.I.17) On October 23, 1998, the Automobile Arbitration Panel denied both claims because "[plaintiffs] failed to satisfy the burden of proof." (*Id.*)

On November 20, 1998, plaintiffs filed a tort claim in the Superior Court of Delaware. (D.I.23, Ex. C) The court dismissed the complaint, refusing to hear the PIP claim, as plaintiffs are not permitted to bypass an appeal from the arbitration panel by filing a claim directly to the Superior Court. (*Id.*)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden to demonstrate that no genuine issue as to any material fact is present. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300 (3rd Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231 (3rd Cir. 1995). However, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment; the function of this motion is to weigh the evidence and determine if a genuine issue is present for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. DISCUSSION

### A. Breach of Contract

 Not every refusal to pay a claim of insurance will constitute a breach of contract by an insurer. *See Casson v. Nationwide Ins. Co.*, 455 A.2d 361 (Del.Super.Ct.1982). An insurance company is only obligated to pay reasonable and necessary medical expenses as set forth in 21 Del. C. § 2118. *See id.* Plaintiffs bear the burden of proof to show that the medical expenses and lost wages are reasonable and necessary as a result of the automobile accidents. *See Gray v. Allstate Ins. Co.*, 668 A.2d 778 (Del.Super.Ct.1995). Furthermore, the insured must show that he has complied with all conditions precedent to the insurer's performance. *See Casson*, 455 A.2d at 365.

Plaintiffs allege that: (1) Lumbermens and Ms. Koval contracted to provide automobile insurance coverage; (2) they breached their contract of insurance by delaying or denying payment of covered claims for PIP; and (3) plaintiffs have

been deprived of the benefit of the insurance coverage for which premiums were paid under those contracts as a direct result of the breach. (D.I. 1 at 32)

■ The court finds that plaintiffs have not shown that the medical expenses and lost wages were reasonable and necessary pursuant to 21 Del. C. § 2118. Defendants previously paid $3,109.00 to Wilmington Pain and Rehabilitation for medical payments that were deemed reasonable and necessary. (D.I. 23, Ex. D at 16, 17) Denial of plaintiffs' medical PIP claim was based in part on Dr. Andrew Gelman's examination of plaintiff Brenda McDuffy, wherein he found her to be capable of performing light-duty work. (*Id.* at 6)

Likewise, plaintiffs have failed to show that they complied with all conditions precedent to the insurer's performance. Defendants refused to pay plaintiffs' salary PIP because plaintiffs failed or refused to provide income verification to show lost earnings as required under 21 Del. C. § 2118. (*Id.*, Exs. E, F) Plaintiffs submitted evidence of gross income for a partnership, but never submitted evidence of salary amounts paid to plaintiffs by the partnership. (*Id.*) Because the information needed by defendants to process the claim was incomplete, defendants denied plaintiffs' salary PIP claim.[1] (*Id.* at ¶ 11)

Because plaintiffs failed to meet their burden of proof as set forth in 21 Del. C. § 2118, the court finds that summary judgment in favor of defendants as to plaintiffs' claim of breach of contract is warranted.

## B. Bad Faith Breach of Contract

■ To establish a claim for bad faith breach of contract, plaintiffs must show that the insurer's refusal to honor its con-

tractual obligations was clearly without reasonable justification. *See Casson*, 455 A.2d at 369. "The ultimate question is whether at the time the insurer denied liability, there existed a set of facts or circumstances known to the insurer which created a bona fide dispute and therefore a meritorious defense to the insurer's liability." *Id.*

As set forth above, plaintiffs have failed to show that defendants' refusal to pay PIP benefits was clearly without reasonable justification. Furthermore, there was a bona fide dispute as to whether plaintiff Brenda McDuffy was an occupant of the vehicle at the time of the first accident. (D.I. 23 at ¶ 11) Defendant Marsico, the driver of the other vehicle involved in the accident, told defendant Lumbermens that plaintiff Brenda McDuffy was not a passenger in the vehicle at the time of the accident. (*Id.*) These facts created a bona fide dispute that justified defendants' denial of PIP benefits.

■ Because of bona fide disputes regarding whether plaintiff Brenda McDuffy occupied the vehicle at the time of the accident and whether plaintiffs are entitled to loss of earnings benefits, plaintiffs' claims of bad faith are without merit. The court finds that no genuine issue of material fact exists regarding any alleged bad faith on the part of defendants. Accordingly, the court shall grant summary judgment in favor of defendants on plaintiffs' claims for bad faith breach of contract.

## C. Breach of the Duty of Fair Dealing

■ To support a claim for breach of the duty of fair dealing, plaintiffs must

---

1. The court notes that its grant of summary judgment is consistent with the results of plaintiffs' arbitration proceeding. (D.I.23, Exs.A, B) Plaintiffs filed a claim before the State of Delaware Department of Insurance seeking recovery of PIP benefits. (*Id.*) On October 23, 1998, the Automobile Arbitration Panel found in favor of defendants because plaintiffs failed to satisfy their burden of proof that their expenses were compensable. (*Id.*)

show that an insurer failed to investigate or process a claim or delayed payment in bad faith. *See Merrill v. Crothall–American, Inc.,* 606 A.2d 96 (Del.1992). A lack of good faith would be shown by the denial of benefits made "clearly without any reasonable justification." *Casson,* 455 A.2d at 369.

Plaintiffs contend that defendants have refused to deal fairly with them and have denied benefits without reasonable justification. (D.I. 1 at 33) As set forth above, these claims are without merit. Accordingly, because plaintiffs have failed to make a showing of bad faith on the part of defendants, the court shall grant summary judgment in favor of defendants on plaintiffs' claims for breach of the duty of fair dealing.

### D. Common Law Fraud

In stating their claim for common law fraud, plaintiffs allege that defendants falsely represented the content of their contracts. (*Id.* at 34) They contend that there was an implied representation in the insurance contract that defendants would neither delay nor deny payment of covered PIP benefits without reasonable justification. (*Id.*) They allege defendants made these misrepresentations with the intent to induce plaintiffs into entering into the contract. (*Id.*) Plaintiffs state that they justifiably relied on these representations and have been injured as a result of their reliance. (*Id.*)

As set forth above, there was reasonable justification for the denial of plaintiffs' benefits. (D.I. 23 at ¶ 11, Exs. E, F) Plaintiffs have failed to demonstrate that the reasons for denying the benefits were not justified. Also, plaintiffs have failed to show that defendants made any false representations regarding prompt payment of benefits. Thus, the court shall grant summary judgment in favor of defendants on plaintiffs' claim of common law fraud.

### E. Consumer Fraud

The Delaware Consumer Fraud Act imposes liability on those who

act, use or employ[ ] . . . any deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission in connection with a sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby[.]

6 Del. C. § 2513 (2001).

Here, plaintiffs have merely alleged that defendants have committed a violation of the Delaware Consumer Law Fraud Act. (D.I. 1 at 35) They have failed to provide evidence that defendants have committed any fraudulent behavior. Accordingly, the court shall grant summary judgment in favor of defendants on plaintiffs' claim of consumer fraud.

### F. State and Federal RICO Claim

In 1970, Congress enacted the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.,* primarily " to address the infiltration of legitimate business by organized crime." *United States v. Turkette,* 452 U.S. 576, 591, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Despite acknowledging that "[o]rganized crime was without a doubt Congress' major target," the Supreme Court consistently has refused to narrow the construction of RICO's expansive terms to impose an organized crime limitation. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 245, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *see, e.g., Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993); *Nat'l. Org. for Women, Inc., v. Scheidler,* 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994); *Sedima, S.P.R.L. v.*

*Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246. Like the federal RICO statute, Delaware's "Organized Crime and Racketeering" statute, 11 Del. C. §§ 1501–11, was enacted to "guard against and protect the infiltration and illegal acquisition of legitimate economic enterprises by racketeering practices, and the use and exploitation of both legal and illegal enterprises to further criminal activities." 11 Del. C. § 1501 (2002). The Delaware statute specifically states that it is "intended to apply to conduct beyond what is traditionally regarded as 'organized crime' or 'racketeering.'" *Id.*

The section of RICO allowing private civil suits such as the instant action provides that

> [a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c). The Delaware state law equivalent to this section of RICO is similarly worded. *See* 11 Del. C. § 1505(c). In the case at bar, plaintiffs are moving under both state and federal RICO laws. (D.I. 1 at 1)

■ The court concludes that plaintiffs' allegations do not fall within the ambit of either RICO or the Delaware Organized Crime and Racketeering statute. The complaint before the court contains no allegation that could possibly lead to a finding that defendants engaged in conduct amounting to "racketeering activity" as that term is defined in 18 U.S.C. § 1961(1) or 11 Del. C. § 1502(9). Plaintiffs allege that defendant Sebastianelli "used his race and friendship to cut off our contracts" and "appeared to be collecting bribe checks from the insurance company." (D.I. 1 at ¶ 61, 115) They further allege that defendant Lumbermens is involved in "a pattern of racketeering activity, including two or more acts of mail fraud." (*Id.* at 36). These allegations are insufficient to establish racketeering activity, much less the other elements required to allege a RICO claim. The complaint, therefore, no matter how liberally construed, cannot be said to state a claim under either RICO or the Delaware Organized Crime and Racketeering statute. Accordingly, the court shall grant summary judgment in favor of defendants on plaintiffs' state and federal RICO claims.

## G. Denial of Access to the Courts

■ There is a fundamental constitutional right of access to the courts, founded both in the First Amendment guarantee of right to petition for redress of grievances, and in the due process clause which assures that no person will be denied the opportunity to present to the courts their claims concerning violations of fundamental constitutional rights.

*LeBlanc v. Lee,* No 97–1811, 2000 WL 282790, at *1, 2000 U.S. Dist. LEXIS 3310, at *4 (E.D.La. March 14, 2000) (citing *Ryland v. Shapiro,* 708 F.2d 967 (5th Cir. 1983)). In order to establish a civil rights claim for violation of the right of access to the courts, plaintiffs must show they were denied access to the courts and they suffered "actual injury," in that the actions of the defendants interfered with efforts to pursue their claim. *Id.* (citing *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Plaintiffs do not have to actually be denied total access to the courts "in order to have a viable access to the courts claim." *Id.* at *5, 2000 WL 282790, at *2.

The record reflects that plaintiffs have commenced a number of legal proceedings in a number of forums including the present suit, a suit in Delaware Superior Court for salary and medical losses (D.I. 1 at ¶ 3), Insurance Commissioner PIP Arbitration (*Id.* at 120), as well as eight additional lawsuits that plaintiffs list in response to State defendants' interrogatory No. 4. (D.I. 21 at 21) Plaintiffs had the opportunity to appeal the Automobile Panel Arbitration's Award. Instead, they chose to file a tort claim with the Superior Court of Delaware. (D.I.23, Ex. C) The court refused to hear the PIP claim, stating that plaintiffs could not bypass an appeal from the arbitration panel by filing a direct claim with the court. (*Id.*) Plaintiffs' failure to properly appeal the arbitration award does not appear to be due to any actions taken by defendants.

■ The court finds that plaintiffs have not been denied access to the courts. Thus, the court shall grant summary judgment in favor of defendants on plaintiffs' claim for denial of access to the courts.

### H. Due Process

■ A due process claim consists of three elements: (1) defendant must deprive plaintiff of an interest protected by law; (2) the deprivation must be the result of some governmental action; and (3) the deprivation must be without due process. *See Cospito v. Heckler,* 742 F.2d 72 (3rd Cir.1984).

Here, plaintiffs allege that defendants denied them notice and an opportunity to be heard at a meaningful time and in a meaningful manner. (D.I. 1 at 37) Plaintiffs have failed to allege the necessary state action by defendants. Thus, the court shall grant summary judgment in favor of defendants on plaintiffs' claim of a due process violation.

### I. Equal Protection

■ A plaintiff who asserts an equal protection claim based on selective enforcement must show that: (1) the plaintiff, compared with others similarly situated, was selectively treated; and (2) the selective treatment was motivated by an intent to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. *See Brobson v. Borough of New Hope,* No. 00–0003, 2000 WL 1738669, at *5 (E.D.Pa. Nov. 22, 2000); *see also Gov't of the Virgin Islands v. Harrigan,* 791 F.2d 34 (3rd Cir.1986) (stating similar standard for equal protection claim based on selective criminal prosecution).

To the extent that plaintiffs are suing defendants in their individual capacities, they fail to state an equal protection claim. Plaintiffs allege that defendants "require[d] different standards for us as African [A]mericans to receive the state and legally mandated salary and medical payment[.]" (D.I. 1 at ¶ 40) Plaintiffs fail to name any other similarly situated person who was treated differently. Thus, the court shall grant summary judgment in favor of defendants on plaintiffs' claim based on an equal protection violation.

### J. Section 1981 Claim

To establish a claim under 42 U.S.C. § 1981, plaintiffs must show that

(1) [plaintiffs are] a member of a racial minority; (2) defendants intended to discriminate on the basis of race; and (3) that discrimination concerned one or more of the activities enumerated in the statute.

*Delliponti v. Borough of Norristown,* No. 98–3837, 1999 WL 213370, at *2 (E.D.Pa. Apr. 9, 1999) (quoting *Mian v. Donaldson,*

*Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085 (2nd Cir.1993)).

Plaintiffs believe that they have submitted sufficient facts which support a claim of discriminatory intent. (D.I.1) In their complaint, they allege that defendant Koval used racial overtones when communicating with them. (*Id.* at 31) Plaintiffs claim that defendant Koval "became extremely hostile as she attempted to harass, intimidate and threaten that Brenda McDuffy would not be getting any benefits with the inference being that because she was African American." (*Id.* at 50) They also allege that defendant Lumbermens "required different standards for us as African Americans" to receive compensation, and that defendant Sabastianelli "implied that only whites could have the rights of motor vehicle rules and laws." (*Id.* at 40, 95(d))

█ The court agrees that plaintiffs are members of a racial minority, but finds that plaintiffs have failed to create a genuine issue of material fact as to defendants' intent to discriminate against them on the basis of race. In order to show intentional discrimination, plaintiffs "must point to facts of record which, if proved, would 'establish that defendants' actions were racially motivated and intentionally discriminatory,' or, at least, 'support an inference that defendants intentionally and purposefully discriminated' against them on the basis of race." *Ackaa v. Tommy Hilfiger Co.,* No. 96–8262, 1998 WL 136522, at *3 (E.D.Pa. Mar. 24, 1998) (internal citations omitted). Upon review of the entire record, the court finds no evidence indicating that defendants' conduct suggests a purposeful, race-based discrimination towards either plaintiffs or the African–American community. Thus, the court shall grant summary judgment in favor of defendants on plaintiffs' section 1981 claim.

## K. Section 1983 Claim

Section 1983 imposes liability on any person who, under color of state law, deprives another of any rights secured by the Constitution or the laws of the United States. *See* 42 U.S.C. § 1983. To establish a section 1983 violation, the plaintiff must "demonstrate a violation of a right protected by the Constitution ... that was committed by a person acting under the color of state law." *Nicini v. Morra,* 212 F.3d 798, 806 (3rd Cir.2000). In their complaint, plaintiffs allege that defendants "denied them the contracted right and opportunity to receive and or collect monetary payments necessary to the survival of a family and to prevent unlimited losses, and property rights to buy, owe and retain property free and clear of harassment and intimidation by state officials." (D.I. 1 at 1) They also claim that the "arbitration meeting was seriously racially offensive and violated numerous procedures protected by the Constitutions of Delaware and the United States." (*Id.* at 121)

█ The Eleventh Amendment bars section 1983 claims against state officials sued in their official capacities. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Therefore, plaintiffs' section 1983 claims against defendants in their official capacities are dismissed. Furthermore, plaintiffs have failed to demonstrate the deprivation of any rights by defendants acting in their individual capacities. Thus, the court shall grant summary judgment in favor of defendants on plaintiffs' section 1983 claim.

## L. Section 1984 Claim

Sections one and two of 42 U.S.C. § 1984 were declared unconstitutional in *U.S. v. Singleton,* 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). Sections three and four of that statute were repealed by Act June

25, 1948, ch. 645, § 21, 62 Stat. 862. Therefore, the court presumes that the plaintiffs did not intend to include a claim based upon that statute as a part of the complaint. Thus, the court shall grant summary judgment in favor of defendants on plaintiffs' section 1984 claim.

## M. Section 1985(3) Claim

▮ Section 1985 was enacted to combat conspiracies motivated by racial or class-based discrimination. To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) that the conspiracy is motivated by a racial- or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *See Lake v. Arnold*, 112 F.3d 682 (3rd Cir.1997).

In their complaint, plaintiffs allege that Mr. Sebastianelli acted unlawfully because he "persuaded this [arbitration] committee to not have the need to pay African Americans" and arguing that "we had no right to access to the courts as prescribed by state law for whites." (D.I. 1 at 122) Plaintiffs allege that Mr. Sebastianelli "joined hands with Geraldine and Louis Marsico in advising that essentially the McDuffys as African Americans did not have the right to appeal their case for trial de novo as the state law allows for whites." (*Id.* at 123) They further contend that Mr. Sebastianelli conspired with Mr. Marsico to "pay no attention to state law of the Superior Court Judge Alford, who is African American, and the Prothonotary's Office" by refusing service by the Prothonotary's officer. (*Id.* at 124)

Because the court finds no evidence in the record suggesting that defendants acted pursuant to a race- or class-based animus toward plaintiffs, the court concludes that plaintiffs have failed to create a genuine issue of material fact on this claim. Thus, the court shall grant summary judgment in favor of defendants on plaintiffs' section 1985(3) claim.

## N. Section 1986 Claim

▮ Section 1986 imposes liability on those who "having knowledge that any of the wrongs conspired to be done, and mentioned in 42 U.S.C. § 1985, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do[.]" 42 U.S.C. § 1986. Because section 1986 is derivative of section 1985, no claim for relief under this section is valid unless a claim has first been established under section 1985. *Santiago v. Philadelphia*, 435 F.Supp. 136 (E.D.Pa.1977). Because the court granted summary judgment for defendants on plaintiffs' section 1985 claims, the court shall grant summary judgment in favor of defendant Williams on plaintiffs' section 1986 claims.

## V. CONCLUSION

For the reasons stated, defendants' motions for summary judgment are granted, plaintiffs' motion to deny defendants' motions for summary judgment is denied, and plaintiffs' motion to compel discovery is denied as moot.

## ORDER

At Wilmington this ___ day of September, 2002, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that:

1. The motions for summary judgment filed by defendants Noreen Koval, Lumbermen's Mutual Auto Insurance Company, Donna Lee Williams and Baldo Sebastianelli (D.I.20, 23) are granted.

2. Plaintiffs' motion to deny defendants' motions for summary judgment (D.I.27) is denied.

3. Plaintiffs' motion to compel discovery (D.I.24) is denied as moot.

4. The Clerk is directed to enter judgment in favor of defendants Lumbermen's Mutual Auto Insurance Co., Noreen Koval, Donna Lee Williams, and Baldo Sebastianelli and against plaintiffs Louis McDuffy, Jr. and Brenda McDuffy.