[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11565

_____

D.C. Docket No. 4:18-cv-00353-RH-MJF

ANSEL JOHNSON,

Plaintiff - Appellant,

versus

SAMUEL CULPEPPER,
Director,
WARDEN,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(August 26, 2021)

Before BRANCH, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

This case comes before us on appeal from a District Court order dismissing a *pro se* plaintiff's complaint with prejudice. The District Court *sua sponte* dismissed the case on the grounds that the plaintiff filed his 42 U.S.C. § 1983 claim for illegal sentencing after the statute of limitations had run and that the plaintiff had named the wrong defendants. We reverse the District Court's dismissal of the case because plaintiff filed within the statute of limitations and the District Court should have given him leave to amend his complaint either to allege why the named defendants were proper or to name alternative defendants.

I.

Ansel Johnson appeals from the District Court's *sua sponte* dismissal of his civil rights case brought under 42 U.S.C. § 1983. In 2003, Johnson was convicted in Texas for evading arrest. *Johnson v. State*, 137 So.3d 518, 519 (Fl. 4th Dist. Ct. App. 2014) (per curiam). In 2008, Johnson was convicted in Florida of domestic battery by strangulation, a felony carrying a five-year maximum sentence under Florida law. *Id.* at 518. Based on Johnson's previous conviction for evading arrest in Texas, the Florida trial court labeled Johnson as a habitual felony offender under Florida law, which status raised the mandatory minimum sentence to ten years. *Id.* Johnson challenged his status as a habitual felony offender on appeal, but the Florida Fourth District Court of Appeal affirmed the ten-year sentence. *Johnson v.*

2

*State*, 36 So.3d 111 (Fl. 4th Dist. Ct. App. 2010).  Johnson began serving his

sentence on June 21, 2008.

On February 14, 2012, Johnson filed a Florida Rule of Criminal Procedure

3.800(a) motion to correct what he believed to be an illegal sentence.  *See Johnson*,

137 So.3d at 518.  The trial court denied the motion, but on April 2, 2014, the

Florida Fourth District Court of Appeal reversed the trial court's decision on the

ground that the conviction for evading arrest from 2003 would have only been a

misdemeanor at Florida law.  *Id.* at 521.  Thus, the Florida Fourth District Court of

Appeal held that Johnson was not a habitual felony offender based on that offense

and explained that Johnson had served more than the statutory maximum sentence

for his Florida conviction.[1]  *Id.*  The Florida Fourth District Court of Appeal

directed that there be a "new sentencing hearing" where the State could attempt to

offer "evidence of another qualified offense sufficient to" impose habitual felony

offender status.  *Id.*  The Court also directed that the "trial court . . . expedite the

proceedings on remand."  *Id.*  The Mandate was issued on April 21, 2014.

There is some confusion in the record as to what happened next.  While

Johnson's appeal of his Rule 3.800(a) motion with the Florida Fourth District

---

[1] Johnson alleges that he had served five years, ten months, and eleven days at the time of his release.  He appears to have actually served five years, ten months, and eight days: he began serving his sentence on June 21, 2008, and he was released on April 29, 2014.

3

Court of Appeal was pending, relations had broken down between Johnson and his public defender.  Johnson's public defender had moved to withdraw from the case on May 13, 2013, but she never received permission to do so by the court.  A court order dated April 28, 2014, indicates that the State had no other evidence to support habitual felony offender status and that Johnson's public defender waived the new sentencing hearing on the ground that Johnson had already served more than the statutory maximum sentence of five years.[2]  Apparently unaware of the public defender's waiver of the right to a resentencing hearing, Johnson contends in his pleadings that he "was just released in the middle of the night on April 29, 2014," without ever being resentenced.

On July 19, 2018, four years, two months, and twenty-one days after his release from prison, Johnson filed a § 1983 complaint in the Northern District of Florida, alleging violations of his Fifth and Fourteenth Amendment rights "causing false imprisonment."  He named Samuel Culpepper, Director of Region One of the Florida Department of Corrections, and Christopher Hodgkens, presiding Warden at the Jefferson Correction Institution, as defendants in the action in both their individual and official capacities.  The Magistrate Judge, without commenting on

---

[2] The court order reads as follows: "In an effort to insure expedited proceedings, and to avoid unnecessary delay, the Court had its Judicial Assistant send an email to both the State and Defense Counsel, inquiring whether a resentencing would be necessary . . . The State replied that it did not have another qualifying offense . . . and the defense waived any hearing."

4

the merits of the complaint, directed Johnson to file an *in forma pauperis* motion to comply with the Court's Local Rules and re-submit his complaint. In response, Johnson then used the correct form for an *in forma pauperis* motion, alleging the same set of facts in the accompanying complaint as he had in his original complaint. He alleged false imprisonment and a "void sentence" in violation of his Fifth, Eighth, and Fourteenth Amendment rights. Johnson's contention in both his complaints was that he never received the new sentencing hearing that he was entitled to under the Florida Fourth District Court of Appeal's order.

On March 19, 2019, the Magistrate Judge reviewed the complaint under 28 U.S.C. § 1915(e)(2)(B) of the Prison Litigation Reform Act. Pursuant to § 1915, the Magistrate Judge recommended that Johnson's case be dismissed with prejudice for failure to state a claim because, in his estimation, Johnson's case was time-barred as outside the applicable four-year statute of limitations. The Magistrate Judge recommended that the dismissal be with prejudice, because, while plaintiffs usually should have at least one chance to amend, Johnson had already had one opportunity to amend when he re-filed his complaint with the correct the *in forma pauperis* form.

The District Court adopted the Magistrate Judge's recommendation, dismissing Johnson's claim with prejudice, on the ground that "it was obvious" that Johnson's release signaled "that he was not going to be resentenced." Thus,

5

the District Court found that the statute of limitations began running on April 29,

2014, the date of Johnson's release, and that the July 19, 2018 complaint was

untimely because it was outside the four-year statute of limitations. The District

Court also dismissed on the alternative ground that Johnson had named the wrong

defendants in his complaint. Johnson timely appealed.

II.

"[W]e review *de novo* a district court's *sua sponte* "dismissal under 28

U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be

granted." *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278 (11th Cir. 2001). The

language of § 1915(e)(2)(B)(ii) "tracks the language of Federal Rule of Civil

Procedure 12(b)(6)," so the "*de novo* standard for 12(b)(6) dismissals governs

dismissal under 1915(e)(2)(B)(ii)."[3]  *Leal*, 254 F.3d at 1278 (internal citations

omitted). Under the Rule 12(b)(6) standard, a complaint will survive a motion to

---

[3] In the context of dismissal of prisoner's claims under § 1915, our case law has often cited *Hughes v. Lott*, for the proposition that dismissal of a prisoner's complaint as time-barred is appropriate only if it appears "beyond a doubt from the complaint itself that [the prisoner] can prove no set of facts which would avoid the statute of limitations bar." 350 F.3d 1157, 1163 (11th Cir. 2003) (quoting *Leal*, 254 F.3d at 1280). However, the standard articulated in *Hughes* was based on the *Conley* standard for 12(b)(6) motions, which was abrogated by *Twombly* and *Iqbal*. *See Twombly*, 550 U.S. at 562, 127 S. Ct. at 1969. Thus, the standard articulated in *Hughes* for determining whether a plaintiff has adequately pled that he falls within the statute of limitations is no longer good law under *Twombly* and *Iqbal*. Following the Rule 12(b)(6) standard, the standard for statute of limitations pleading is whether a plaintiff has pled "sufficient factual matter, that, accepted as true," would state that the plaintiff is within the applicable statute of limitations. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1974.

dismiss when there is "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). This Court holds *pro se* pleadings "to a less stringent standard than pleadings drafted by attorneys and will, therefore," liberally construe such pleadings. *Henley v. Payne*, 945 F.3d 1320, 1327 (11th Cir. 2019) (internal citations and quotations omitted).

We review a district court's "denial of a motion to amend a complaint for abuse of discretion." *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). Under Federal Rule of Civil Procedure 15, courts should give leave to amend "when justice so requires." *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018). And a plaintiff should have at least one chance to amend a complaint before dismissal with prejudice when "a more carefully drafted complaint might state a claim" for relief. *Id.* (internal citations and quotations omitted).

Section 1983 does not contain its own statute of limitations. Under 42 U.S.C. § 1988, courts determine the appropriate statute of limitations for § 1983 actions by looking at the analogous state statute of limitations in cases of tort actions for the recovery of damages for personal injury. *Owens v. Okure*, 488 U.S. 235, 249–50, 109 S. Ct. 573, 581–82 (1989). For § 1983 claims in Florida, the

7

appropriate statute of limitations is four years. *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003); *see* Fla. Stat. § 95.11(3) (1991).

The time at which the four years begins to run is governed by federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The statute of limitations begins to run when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Brown v. Georgia Bd. of Pardons and Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (internal citation omitted). So, a § 1983 action will not accrue until the "plaintiff knows or has reason to know" that he has been injured.[4] *Calhoun v. Al. Alcoholic Beverage Control Bd.*, 705 F.2d 422, 424 (11th Cir. 1983) (internal citation omitted).

## III.

The first issue is whether the District Court was correct to say that Johnson's claims were reasonably apparent at the date of his release from custody, April 29, 2014. If the District Court is correct in that analysis, using the four-year statute of

---

[4] In support of his argument, Johnson cites *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994), for the proposition that "'[w]here, as here, a plaintiff alleges a § 1983 cause of action for damages attributable to an unconstitutional . . . sentence,' that claim does not accrue, and indeed cannot be asserted, 'until the conviction or sentence has been invalidated.'" Johnson's sentence was invalidated on April 2, 2014, and it is clear from *Heck* that Johnson's claim *could not* have been asserted before that point. The more difficult question is when Johnson's claim *could* have been asserted, and that question is governed by *Brown*, not *Heck*.

limitations for § 1983 actions, Johnson would have needed to file his cause of action by April 29, 2018, which he did not do. The second issue is whether the District Judge abused his discretion when he dismissed with prejudice on the alternative ground that Johnson had named the wrong defendants.

The critical question for determining whether the statute of limitations has run is when it would have been "apparent to a person" in Johnson's position with "a reasonably prudent regard for his rights" that he was not going to be resentenced, even though the Florida Fourth District Court of Appeal specifically directed the lower court to hold a new sentencing hearing. *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987).

We disagree with the District Court's assertion that Johnson's release made it "obvious" that he was not going to be resentenced. It is not obvious to us that an appellate court's instruction to conduct a new sentencing hearing would be ignored by the trial court on remand. We are not swayed by the potential argument that Johnson had already served more time than the maximum possible sentence when he was released and consequently should have known that he was not going to be resentenced. In fact, the Florida Fourth District Court of Appeal specifically contemplated this issue when it directed a new sentencing hearing. *See Johnson*, 137 So.3d at 521. That Court directed the trial court to conduct such a hearing so that the State would have the opportunity to put on more evidence to support

9

habitual felony offender status, noting that Johnson had already served more than the statutory maximum sentence for his conviction absent habitual felony offender status. *Id.* So, a new sentencing hearing would have served two purposes. First, it would have given the State an opportunity to supply additional evidence that would qualify Johnson as a habitual felony offender. Second, it would have allowed Johnson to determine the extent of his constitutional injury because it would have informed him of the amount of time he served over the sentence he would have been given absent habitual felony offender status.[5]

We have established that the statute of limitations did not begin running on April 29, 2014, when Johnson was released from prison because it would not have been apparent to "a person with a reasonably prudent regard for his rights that he would not be resentenced after release. *Mullinax*, 817 F.2d at 716. The more difficult question is when the statute of limitations *did* begin to run. We do not think it is necessary to identify a precise date when the statute of limitations began to run on Johnson's cause of action. Johnson's allegations suggest that his public defender was not communicating with him about the status of the case, leaving Johnson in uncertainty about what to expect from the trial court. It is reasonable that someone in Johnson's position would have waited at least two months and

---

[5] Johnson's minimum prison sentence for the strangulation conviction would have been 15.675 months.

twenty-one days before inquiring about the status of his new sentencing hearing. Delays in sentencing are not uncommon. *See* 18 U.S.C. § 3143. We hold that Johnson plausibly alleged that he filed within the four-year statute of limitations when he filed his § 1983 action in Florida on July 19, 2018.

Although not mentioned by the District Court, we would like to address the portion of Johnson's brief that discusses Johnson's relationship with his public defender. Even if the public defender waived Johnson's right to a resentencing, Johnson sufficiently pled that he did not know the status of his case, for instance, by saying that he was "just released in the middle of the night" without ever being "given a new sentencing hearing." It is entirely plausible, based on Johnson's contentious relationship with his public defender, that the public defender made the decision to waive the resentencing hearing without Johnson's permission, causing Johnson to wait in uncertainty upon his release. A more developed factual record is necessary to resolve questions surrounding Johnson's relationship with his public defender, but at present Johnson has pled enough facts to state a claim for relief.

We now turn to the District Court's alternative basis for dismissal, that Johnson named the wrong defendants. Looking at the substance of Johnson's claims, he plausibly alleged that he was incarcerated for more than ten months beyond the legal maximum for his sentence. In doing so, he stated a cause of

11

action under § 1983, and the District Court should have provided Johnson, a *pro se* plaintiff, with the opportunity to amend his complaint either to allege more facts about Culpepper and Hodgkens's involvement in the illegal sentencing or to name alternative defendants. *See Woldeab*, 885 F.3d at 1292 (explaining that "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice); *Wilger v. Dep't of Pensions and Sec.*, 593 F.2d 12, 13 (5th Cir. 1979) (allowing *pro se* plaintiffs the opportunity to amend because there were indications that individuals not named in the original complaint could have been proper defendants). The District Court provided no explanation as to why dismissal with prejudice was appropriate here when Johnson could have amended his complaint to cure the deficiency the District Court identified. In failing to do so, the District Court abused its discretion.

The Magistrate Judge believed that Johnson had a sufficient opportunity to amend because Johnson was allowed to file an amended *in forma pauperis* motion and complaint after he mistakenly filed his original complaint on the wrong form. *See Troville v. Venz*, 303 F.3d 1256, 1260 n.5 (11th Cir. 2002) (explaining that plaintiffs should freely be given leave to amend under § 1915(e)(2)(B)(ii) "when justice so requires"). But the Magistrate Judge did not comment on the substance of the original complaint when he required Johnson to re-file with the correct

12

forms, and, consequently, the second complaint was substantively the same as the first.  The Magistrate Judge's theory that allowing a procedural amendment satisfies *Troville* undermines this Circuit's case law on the leniency with which judges should handle the pleadings of *pro se* plaintiffs, who are often unaware of local pleading requirements.  *See, e.g.*, *Troville*, 303 F.3d at 1260 n.5; *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam) (explaining that "[*p*]*ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys") (internal citation omitted). Following the Magistrate Judge's reasoning, *Troville's* provisions for *pro se* plaintiffs would be eviscerated because the indigent, *pro se* plaintiff who files his complaint on the wrong form would be entitled to no opportunity to amend based on the content of his complaint.  That is certainly not in keeping with *Woldeab's* admonition that "courts should freely give leave to amend when justice so requires."  885 F.3d at 1291.  We are not satisfied that Johnson received a meaningful opportunity to amend his complaint.

We therefore reverse the District Court's dismissal because Johnson filed within the statute of limitations, and we remand with instructions for the District Court to allow Johnson the opportunity to amend his complaint.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

13